IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

PLAYA HERMOSA DEVELOPMENT
CORP.

      DEBTOR

_____

    ORIENTAL BANK

      MOVANT

CASE NO. 14-09236(ESL)
CHAPTER 11

*MOTION TO DISMISS UNDER 11 U.S.C. 1112(b) AND OPPOSITION TO DEBTOR'S
REQUEST FOR EXTENSION OF TIME FILED AT DOCKET 15*

TO THE HONORABLE COURT:

    Comes now, **ORIENTAL BANK** through its undersigned counsel and respectfully alleges and prays:

### JURISDICTION

    1. The jurisdiction of the Honorable Court is ascertained under Title 28 USC §1334, and venue under Title 28 USC §1408, and particularly regarding this matter under Title 11 USC §1112(b), on Conversion or Dismissal.

### PROCEDURAL BACKGROUND

    2. On July 30, 2008, Debtor executed a *Master Promissory Note* in favor of Eurobank, now Oriental Bank, and a *First Amendment to Credit and Security Agreement* regarding a Non-Revolving Line of Credit in the amount of $2,150,000.00. The Non-Revolving Line of Credit is completely matured with a balance owed. *See, Attachment A.*

3.    On July 30, 2008, Debtor also executed an *Amended and Restated Promissory Note* in favor of Eurobank, now Oriental Bank, and an *Amended and Restated Credit Agreement* regarding a Time Loan in the amount of $15,313,390.00. The Amended and Restated Credit Agreement is completely matured with a balance owed. *See, Attachment B.*

4.   On November 6, 2014, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. *See, Docket 1.*

5.    Pursuant to Section 1112(b)(1) of the Bankruptcy Code, a party in interest is authorized to request the dismissal of the bankruptcy petition for cause. *See,* 11 U.S.C. §1112(b).

6.    The First Circuit BAP, in *In re Torres Martinez,* 397 B.R. 158 (2008), and citing *In re Davis,* 239 D.R. 573, 579 (10th Circ. BAP 1999), defined the term party in interest as one "who pecuniary interest are directly affected by the bankruptcy proceedings." Furthermore, according to Section 1109 of the Bankruptcy Code, in a Chapter 11 case a party in interest may raise and may appear and be heard on any issue in a case under such party. The listed parties in interest set forth in Section 1109 include creditors, creditors' committee, and indenture

trustee, as well as a trustee and the debtor. *See,* 11 U.S.C. §1109.

7. In this case, and in view of the abovementioned notes, Oriental is a creditor and party in interest with sufficient standing to seek the dismissal of the case pursuant to Section 1112(b) of the Bankruptcy Code.

8. As of today, 29 days after the filing of the petition, Debtor has not filed any of its schedules, listing its assets and liabilities as well as executory contracts and unexpired leases. Also, Debtor has also neglected to file its Statement of Financial Affairs. Pursuant to Federal Rule of Bankruptcy Procedure 1007(c), these documents were due no later than November 20, 2014. However, it was only today that Debtor filed a motion requesting an extension of time to file these documents. *See, Docket 15.*

9. It is Oriental's position that because Debtor's "Motion Requesting Extension of Time to file Schedules and other Documents and Information" was not filed within the 14-day period provided by FRBP 1007(c), and because the stated reasons for not filing the documents in time are scant and unconvincing, the same should be denied by the Court. Moreover, Debtor has failed to demonstrate that its

tardiness was due to an excusable neglect as required by FRBP 9006(b)(1).

10. Oriental submits that debtor's failure to file its Schedules and Statement of Financial Affairs within the time period prescribed by FRBP 1007(c) constitutes cause for the dismissal of the case under Section 1112(b) of the Bankruptcy Code.

11. In support of Oriental's contention, and pursuant to LBR 9013-2(a) which requires a supporting Memorandum of Law with all written motions, Oriental submits the following Memorandum of Law.

<strong><u>MEMORANDUM OF LAW</u></strong>

### (i) *Cause for Dismissal or Conversion for Failure to Timely Satisfy Filing Requirements under Section 1112(b)(4)(F).*

12. Section 1112 of the Bankruptcy Code reads, in the pertinent part, as follows:

> (b)(1)   Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interest of creditors and the estate.
> (…)
> (4) For purpose of this subsection, the term "cause" includes-

    (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

    (B) gross mismanagement of the case;

    (…)

    (E) failure to comply with an order of the court;

    (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title of by any rule applicable to a case under this chapter;

    (…)

13. Prior to the 2005 amendments to the Bankruptcy Code, most courts held that a bankruptcy court has broad discretion under § 1112(b) to either dismiss a case or convert it from Chapter 11 to Chapter 7. *In re Hedquist*, 450 F.3d 801, 804 (8th Cir. BAP 2006) (applying pre-BAPCPA law).

14. Following BAPCPA's 2005 amendments to the Bankruptcy Code, section 1112(b)(1) is no longer permissive, but instead mandates conversion or dismissal if the movant establishes exclusive cause, and no unusual circumstances establish that conversion or dismissal is not in the best interest of creditors. However, whether cause exists under § 1112(b) and, if so, whether dismissal or conversion is appropriate are questions left to the sound discretion of the bankruptcy court. *In re New Towne*

*Development, LLC*, 404 B.R. 140, 146 (Bankr.M.D.La.2009) (citations omitted).

15.  Thus, absent a showing of unusual circumstances, if the moving party establishes that cause exists, it is the Court's obligation to dismiss or convert a Chapter 11 case. *In re New Rochelle Telephone Corp.*, 397 B.R. 633, 640 (Bankr.E.D.N.Y.2008). If there is cause, no contravening unusual circumstances, and no applicable exceptions, the Court must convert or dismiss the Debtor's case pursuant to section 1112(b), whatever is in the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(1). *In re Pittsfield Weaving Co.*, 393 B.R. 271, 276 (Bankr.D.N.H.2008).

16.  Section 521(a)(1) of the Bankruptcy Code directs Debtor to file, unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures and a statement of the Debtor's financial affairs, 11 U.S.C. §521(a)(1). Federal Rule of Bankruptcy Procedure 1007(b)(1) also requires Debtor to file a schedule of executory contracts and unexpired leases and a statement of financial affairs.

17.  In a voluntary case, Rule 1007(c) mandates that the aforementioned schedules and statement of financial affairs "be filed with the petition or 14 days thereafter,

Motion to Dismiss
Case No. 14-09236(ESL)
Page 7 of 14

except otherwise provided in subdivisions (d), (e), (f) and

(h) of this rule."

18. In *In re McLaren,* 236 B.R. 882, 894 (Bankr.

D.N.D. 1999), the court summarized the importance of the

schedules and financial affairs and stated the following:

> It is a "fundamental necessity in
> bankruptcy" that the information which
> debtors provide in their petition, schedules
> and statement of financial affairs be
> accurate, thorough, and reliable. In this
> respect, debtor has a uncompromising duty to
> disclose whatever ownership interest he
> holds in property. The importance of these
> pronouncements cannot be understated; the
> bankruptcy system as a whole and each
> particular case which forms a component part
> of it, cannot function without the honest
> and forthcoming efforts of its debtors.

19. Judge Hill's recitation of the applicable law in

*In re Maclaren,* Id. has been reiterated innumerable times

by other bankruptcy courts in equally stark and plain

terms. One bankruptcy court collected quotations from many

of those other courts and recited them as follows:

> The Sixth Circuit recently stated a debtor
> has an affirmative duty to disclose all of
> its assets in the bankruptcy court ... that
> debtors have a duty to truthfully answer
> questions presented in the various schedules
> and filings carefully, completely and
> accurately. The debtor is imposed with the
> **paramount duty** to carefully consider all
> questions and the schedules and statements
> to see that each is answered **accurately and
> completely.** The burden is on the debtors to
> complete their schedules accurately. The

Motion to Dismiss
Case No. 14-09236(ESL)
Page 8 of 14

>           bankruptcy laws impose a **strict obligation**
>           on debtors to file **complete and accurate**
>           schedules.

*In re Cutler,* 291 B.R. 718, 726-27 (Bankr.E.D.Mich.2003)

(numerous quoted and cited cases omitted) (emphasis added).

Another Court noted: "The schedules and statement of

affairs are **one of the most important duties of the**

**debtor's attorney."** *In re Dennis,* 164 B.R. 318, 320

(Bankr.D.Ariz.1994) (citing Collier on Bankruptcy)

(emphasis added).

Another court simply stated:

>           **We cannot emphasize strong enough** that it is
>           important **that debtors complete their**
>           **schedules accurately.** They are, of course,
>           prepared on a self-declaratory honor system.
>           The debtor's duty of full disclosure is the
>           quid pro quo [the benefits of a bankruptcy]
>           ... [the purpose of these requirements] is
>           to ensure that debtors provide reliable
>           information to those with an interest in the
>           administration of debtor's estate. Creditors
>           are entitled to truthful statements in a
>           debtor's statement of financial affairs so
>           they may conduct their own investigation of
>           those affairs.

*In re Katz,* 203 B.R. 227, 233 (Bankr.E.D.Pa.1996) (cited

and quoted cases omitted) (emphasis added).

        20. Another court summarized the requirements as

follows:

>           A **debtor's duty to fully and accurately**
>           **disclose** all legal or equitable interest in
>           property **on the bankruptcy schedules is**

**paramount and absolute.** A debtor's duty to fully disclosure imposes and **uncompromising duty** to carefully and truthfully answer all questions presented in the bankruptcy schedules and statement of affairs. The **very integrity of the bankruptcy** court and the successful administration of the bankruptcy **system rests upon compliance with debtor's obligations of disclosure.**

*In re Petersen,* 296 B.R. 766, 790 (Bankr.C.D.Ill.2003) (cited and quoted cases omitted) (emphasis added).

21. Numerous other cases are to the same effect. *See e.g. In re Rolland,* 317 B.R. 402, 413 (Bankr.C.D.Cal.2004) (citing and quoting numerous cases for the propositions that "debtors have an absolute duty to file complete and accurate schedules"; "full and comprehensive disclosure is critical to the integrity of the bankruptcy process"; "the veracity of debtor's statements is absolutely essential to the administration of the bankruptcy code"; "the proper operation of the bankruptcy system depends on honest reporting"); *In re Abramov,* 329 B.R. 125, 134-135 (Bankr.E.D.N.Y.2005) (noting the determination of relevance and importance of property for an estate is not the debtor's decision to make and that instead "it is the debtor's role to simply consider the question carefully and answer it completely and accurately."); *In re Costello,* 299 B.R. 882 (Bankr.N.D.Ill.2003) ("debtor must disclose all ownership interest he holds in property" and "the trustee

Motion to Dismiss
Case No. 14-09236(ESL)
Page 10 of 14

and creditors are entitled to honest and accurate sign posts on the trail showing what property has passed through the debtor's hands during the period prior to his bankruptcy" and other similar statements). *See also In re Kasden,* 209 B.R. 239, 243-44 (8th Cir. BAP 1997); *In re Leech,* 408 B.R. 222, 226 (Bankr.E.D.Wis.2009); *In re Hensley,* 381 B.R. 699, 705 (Bankr.N.D.Ind.2007); *In re Whitehead,* 278 B.R. 589, 594 (Bankr.M.D.Fla.2002); *In re Schroff,* 156 B.R. 250, 256 (Bankr.W.D.Mo.1993).

22. These duties are extensive and absolute. As one court noted:

> Debtor *must* file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, schedule of income and current expenditures, and a statement of debtor's financial affairs, cooperate with trustee as necessary to enable the trustee to perform the trustee's duties, and surrender to the trustee any record, recorded information, including books, documents or records, papers relating to the property of the estate.

*In re Matus,* 303 B.R. 660, 675 (Bankr.N.D.Ga.2004).

## ALLEGATIONS

23. In the instant case, 29 days have elapsed since the date of the filing of the petition. Still as of this date, Debtor has not filed the Schedules and Statement of Financial Affairs. Further, on its belated motion for extension of time, Debtor has not established that the

delay in filing the required documents was the result of an excusable neglect, as required by FRBP 9006(b)(1).

24. Debtor's conduct constitutes an unreasonable delay prejudicial to Oriental as its creditor.

25. Debtor has seriously underestimated the importance of the filing of the Schedules and Statement of Financial Affairs in a timely manner. These are fundamental and foundation documents in any bankruptcy case.

26. Debtor's failure to timely file documents in this case demonstrates a serious want of diligence on Debtor's part and a complete disregard for its creditors, the United State Trustee and the Honorable Court, all of whom have been kept in the dark as to Debtor's financial affairs while Debtor enjoys the broad protections of the automatic stay. Debtor's inaction and lack of compliance with FRBP 9006 warrants dismissal of the case and the denial of its motion for extension of time filed at Docket no. 15.

27. Here, cause for has been established under Section 1112(b)(4)(F) of the Bankruptcy Code. Furthermore, Oriental submits that dismissal rather than conversion is in the best interest of creditors and the estate. Debtor has failed to meet one of the basic obligations of a debtor in possession. Thus, creditors should be afforded the

opportunity to enforce their respective state law rights outside the bankruptcy court.

WHEREFORE, On the basis of the above facts and pursuant to Section 1112(b) of the Bankruptcy Code, Oriental Bank respectfully requests from this Court that an Order be entered denying Debtor's request for extension of time and dismissing the instant case.

## NOTICE

Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this motion has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the Clerk's office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, this motion will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (iii) in the opinion of the Court, the interest of justice requires otherwise.

Puerto Rico Local Bankruptcy Rule 9013-1(h)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that a copy of this motion is being sent by first class mail to the Debtor: **PLAYA HERMOSA DEVELOPMENT CORP.**, at the address on record: AVE. JESUS T. PINERO 293, SAN JUAN, PUERTO RICO 00927; and to the authorized addresses through/by the Bankruptcy CM/ECF System to: all participants, Debtor's counsel, **DIOMEDES LAJARA RADISON;** and to **MONSITA LECAROZ ARRIBAS,** US Trustee.

In San Juan, Puerto Rico, the 5th day of December, 2014.

**DELGADO & FERNÁNDEZ, LLP**
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico  00910-1750
☎ (787) 274-1414
🖷 (787) 764-8241


**S/ALFREDO FERNÁNDEZ MARTÍNEZ**
ALFREDO FERNÁNDEZ MARTÍNEZ
USDC-PR #210511
afernandez@delgadofernandez.com


**S/MARISTELLA SÁNCHEZ RODRÍGUEZ**
MARISTELLA SÁNCHEZ RODRÍGUEZ
USDC-PR #224714
msanchez@delgadofernandez.com

EXHIBIT

A

## MASTER PROMISSORY NOTE
*(Non-Revolving Line of Credit)*

**VALUE: $2,150,000.00**

FOR VALUE RECEIVED, the undersigned, **PLAYA HERMOSA DEVELOPMENT CORPORATION**, a corporation organized under the laws of the Commonwealth of Puerto Rico (hereinafter together with its successors in title and assigns, called the "**Borrower**") promises to pay to the order of **EUROBANK**, a Puerto Rico banking organization (hereinafter together with its successors in title and assigns, called the "**Bank**") the principal sum of or would exceed after the funding of such Advance, **TWO MILLION ONE HUNDRED FIFTY THOUSAND AND 0/100 DOLLARS ($2,150,000.00)** in lawful money of the United States of America, or, if less, the aggregate unpaid principal amount of all Advances made by the Bank to the Borrower pursuant to the Credit Agreement to which reference is hereinafter made, and that are outstanding on the date this Note is presented for payment by the Bank to the undersigned.

All terms used in this Note which are defined in the Credit Agreement and which are not otherwise defined in this Note shall have the meanings set forth in the Credit Agreement.

The aggregate unpaid principal amount of the Advances shall be payable in full **ON DEMAND**. The unpaid principal balance of this Note shall bear interest from the date hereof until full payment of the unpaid balance of principal hereof at a fluctuating annual rate equal to **ONE HUNDRED BASIS POINTS (100 BPS) OVER AND ABOVE THE EUROBANK PRIME RATE**, payable at such times as are specified in the Credit Agreement.

The parties hereto, including the Borrower, guarantor and endorsers, hereby waive presentment, demand, notice, protest and all other demands and notices in connection with the delivery, acceptances, performance and enforcement of this Note and also hereby assent to extensions of the time of payment or forbearance or other indulgences without notice.

The undersigned hereby agrees to pay an additional sum equal to ten percent (10%) of the unpaid principal hereof as a liquidated and agreed amount without necessity of further liquidation or approval by a court of law to cover costs and expenses, including attorney's fees and expenses, incurred by the holder of this Note in the event that the holder shall take recourse of judicial proceedings for the collection of any amount due hereunder and such sum shall be due and payable immediately upon the filing of any such proceedings.

This Note has been issued pursuant to, and is entitled to the terms, conditions, benefits and security provided for by that certain Credit and Security Agreement, dated as of April 26th, 2007, as amended on July 30th, 2008, between the Bank and the Borrower. The Credit Agreement, among other things, contains provisions for optional and mandatory prepayments on the account of principal of the Advances and for late payments and default rates, upon the terms and conditions specified therein.

This Amended and Restated Promissory Note replaces, amends and restates, but does not extinguish or satisfy any pre-existing indebtedness of the Borrower to the Bank heretofore evidenced by a certain promissory note dated April 26th, 2007 (the "**Original Note**"). Nothing in this Amended and

Restated Promissory Note shall constitute or be deemed to constitute a payment, settlement or extinctive novation of the Original Note or as a release or to otherwise adversely affect any rights of Bank against the Borrower. All amounts outstanding under the Original Note shall be transferred to, and be deemed to be outstanding under, this Amended and Restated Promissory Note.

All Advances made by the Bank to the undersigned pursuant to the Credit Agreement and all payments made on account of principal thereof shall be recorded by the Bank and, prior to an transfer hereof, endorsed on the grid attached hereto which is part of this Note, provided, however, that the failure of the Bank to make such entry(ies) shall not limit or otherwise affect the obligations or rights of the Borrower under this Note.

IN WITNESS WHEREOF, PLAYA HERMOSA DEVELOPMENT CORPORATION has caused this Note to be signed in its corporate name by its duly authorized officer on July 30th, 2008.

CORPORATION

PLAYA HERMOSA DEVELOPMENT

By: _____
Name: Nicolás Rivera Valentin
Title: President

Affidavit Number: 3,519

Acknowledged and subscribed to before me by Nicolás Rivera Valentín, as President of PLAYA HERMOSA DEVELOPMENT CORPORATION, of legal age, married, property owner and resident of San Juan, Puerto Rico, personally known to me in San Juan, Puerto Rico, this 30th day of July, 2008.

NOTARY PUBLIC

"ALLONGE"
TO AMENDED AND RESTATED MASTER PROMISSORY NOTE
IN THE SUM OF $2,150,000.00

BORROWER: **PLAYA HERMOSA DEVELOPMENT CORPORATION**

| Date | Loan Advance(s) | Interest | Principal Balance | Registered by: |
|------|-----------------|----------|-------------------|----------------|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

EXHIBIT

## AMENDED AND RESTATED PROMISSORY NOTE

*(Time Loan)*

VALUE: $15,313,390.00

FOR VALUE RECEIVED, PLAYA HERMOSA DEVELOPMENT CORPORATION, a corporation organized and existing under the laws of the Commonwealth of Puerto Rico (the "Borrower"), promises to pay to the order of EUROBANK, a banking corporation organized and existing under the laws of the Commonwealth of Puerto Rico (hereinafter together with its successors in title and assigns, called the "Bank"), the principal sum of FIFTEEN MILLION THREE THIRTEEN THOUSAND THREE HUNDRED AND NINETY AND 00/100 DOLLARS ($15,313,390.00) in lawful money of the United States of America.

The principal amount of this Note shall be payable ON DEMAND. The outstanding principal amount of this Note shall bear interest from the date hereof until full payment, on the unpaid principal balance thereof at a variable annual rate equal at all times to ONE HUNDRED BASIS POINTS (100 BPS) OVER AND ABOVE THE EUROBANK PRIME RATE, and shall be payable at such time as is specified in the Amended and Restated Credit Agreement (as defined below).

All terms used in this Note which are defined in the Amended and Restated Credit Agreement and which are not otherwise defined in this Note shall have the meanings set forth in the Amended and Restated Credit Agreement.

The undersigned hereby agrees to pay an additional sum equal to ten percent (10%) of the unpaid principal hereof as a liquidated and agreed amount without necessity of further liquidation or approval by a court of law to cover costs and expenses, including attorney's fees and expenses, incurred by the holder of this Note in the event that the holder shall take recourse of judicial proceedings for the collection of any amount due hereunder and such sum shall be due and payable immediately upon the filing of any such proceedings.

The parties hereto, including the Borrower and all guarantors and endorsers, hereby waive presentment, demand, notice, protest and all other demands and notices in connection with the delivery, acceptances, performance and enforcement of this Note and also hereby assent to extensions of the time of payment or forbearance or other indulgences without notice.

This Note has been issued pursuant to, and is entitled to the terms, conditions, benefits and security provided for by that certain Amended and Restated Credit Agreement, dated as of July 30th, 2008, between the Borrower and the Bank (the "Amended and Restated Credit Agreement"). The Amended and Restated Credit Agreement, among other things, contains provisions for optional and mandatory prepayments on the account of principal of this Note, and for late payments and default rates, upon the terms and conditions specified therein.

This Note replaces, amends, restates and combines, but does not extinguish or satisfy any pre-existing indebtedness of the Borrower to the Bank heretofore evidenced by the Original Promissory Note. Nothing in this Note shall constitute or be deemed to constitute a payment, settlement or extinctive novation of the Original Promissory Note or as a release or to otherwise adversely affect any rights of Bank

against the Borrower. All amounts outstanding under the
Original Promissory Note shall be transferred to, and be
deemed to be outstanding under, this Note.

In San Juan, Puerto Rico, this 30th day of July, 2008.

PLAYA HERMOSA DEVELOPMENT

CORPORATION

By: _____
Name: Nicolás Rivera Valentín
Title: President

Affidavit Number: 3,515

Acknowledged and subscribed to before me by Nicolás
Rivera Valentín, as President of **PLAYA HERMOSA DEVELOPMENT**
**CORPORATION**, of legal age, married, property owner and
resident of San Juan, Puerto Rico, personally known to me in
San Juan, Puerto Rico, this 30th day of July, 2008.

NOTARY PUBLIC